PEOPLE ex rel. ELLIOT et al. v. KAISER, County Clerk.

(*Supreme Court, Special Term, Kings County.* October 22, 1890.)

ELECTIONS AND VOTERS—CERTIFICATE OF NOMINATION—INDEPENDENT BALLOTS.

    Laws N. Y. 1890, c. 262, § 5, relating to independent nominations, provides that a certificate of such nomination may designate and appoint on its face one or more persons, who, for the purposes set forth in section 17, shall represent the signers of such certificate. Section 17, relating to the ballots, provides that no name of any candidate shall be placed on a ticket put in nomination by certificate, as provided for in section 5, except the name designated in said certificate of nomination, "without the written approval of the person or persons designated and appointed in said certificates, as provided in that section." Said section, after further prescribing that there shall be as many separate kinds of ballots as there are political parties and independent candidates in whose behalf certificates of nomination have been duly filed, provides that "there shall also be as many different kinds of ballots as may be required to comply with the directions hereinbefore authorized of the person or persons designated and appointed, as provided in section 5 of this act, upon the certificate of nomination." *Held*, that the persons so designated and appointed on the certificate could choose associates to be put on the ticket with the independent candidate out of the entire list of nominees for the other offices.

Application by Andrew Elliot and Richard Nagle for a peremptory writ of *mandamus* against William J. Kaiser, county clerk.

*Jas. C. Church,* for relators.    *Frank L. Barnard,* for defendant.

BARTLETT, J. This application involves an interesting and important question under the new ballot reform act, (chapter 262, Laws 1890.) Richard Nagle, one of the relators, has been duly nominated by certificate, under sec-

tion 5 of the statute, as an independent candidate for the office of supervisor of the Second ward in the city of Brooklyn. In the certificate the other relator, Andrew Elliot, is designated and appointed to represent the signers for the purpose set forth in section 17 of the act. According to Mr. Elliot's understanding of the law, or the view of his counsel, the chief of these purposes is the selection of other candidates for the other offices to be filled, whose names shall be placed upon the same ballot with that of the independent candidate for supervisor, Mr. Nagle. Mr. Elliot has therefore notified the county clerk that he approves the placing of certain other names, which he specifies, upon Mr. Nagle's ballot; all of them being names of candidates previously duly put in nomination for the offices indicated. The county clerk refuses to file the written approval tendered to him by Mr. Elliot, and declines to print any name but that of Mr. Nagle upon his ballot, and the independent candidate, together with the representative of the signers of the certificate by which he was nominated, now apply for a peremptory writ of *mandamus* to compel the clerk to place the approved names upon the ticket. Section 5 of the ballot reform act relates to nominations other than by party organizations, and prescribes the requisites of the certificates by which such nominations can be made. After fixing the minimum number of signers for the several classes of offices, and declaring that the signatures need not all be appended to one paper, it goes on to provide that "the certificate may designate and appoint upon the face thereof one or more persons, who, for the purposes set forth in section 17 of this act, shall represent the signers of said certificate."

In the present case it is conceded that Mr. Elliot has been duly designated and appointed, under the provision, to represent the signers of the certificate nominating Mr. Nagle for supervisor of the Second ward. But what does the law authorize him to do as their representative? This is the question upon which the case turns, and to answer it we look at the seventeenth section of the statute, inasmuch as it is only for the purposes set forth in that section that the person designated in the certificate by virtue of the provisions above quoted from section 5 is empowered to act for the signers at all. Section 17 relates to the contents of the ballots, the different kinds to be prepared, and the style of printing. It refers in two places to the action which may be taken by the duly-appointed agent of the signers of an independent certificate of nomination. The first and most significant provision on this subject is in these words: "But no name or names of any candidate or candidates shall be placed upon a ticket put in nomination by certificate, as provided for in section 5, except the name or names specified in said certificate of nomination, without the written approval of the person or persons designated and appointed in said certificates, as provided in that section; but such approval shall be made at least twelve days before election." And, further on, after prescribing that there shall be as many separate kinds of ballots as there are different political parties and independent candidates in whose behalf certificates of nomination have been duly filed," the same section provides: "There shall also be as many different kinds of ballots as may be required to comply with the directions hereinbefore authorized of the person or persons designated and appointed, as provided in section 5 of this act, upon the certificate of nomination."

I think the two provisions which I have quoted from section 17 clearly indicate the functions of a person who is duly designated by the signers of an independent certificate of nomination to represent them, "for the purpose set forth" in that section. The plain import of the prohibition against placing any other names upon the ticket of the independent candidate without the approval of the designated representative of the signers is that such representative may select a name to be placed thereon. In so doing, he does not make new nominations, for I think he must confine his choice to candidates previously nominated in accordance with the law, but from among these he

is allowed entire freedom of selection. Unless this is the meaning of the pro-
visions under consideration, it is difficult to perceive what they do mean. No
other interpretation has been suggested which seems even plausible.    There
is nothing in the objection of the county clerk that each candidate whose
name is thus put upon the ticket at the instance of the authorized represent-
ative of the certificate signers must signify his 'acceptance of the nomination
made in this particular manner; or in the further point that the certificate in
the present case must be signed by 1,000 voters in order to warrant the rep-
resentative of the signers in demanding that the name of a candidate hereto-
fore nominated for the office of associate judge of the court of appeals shall be
placed thereon.   As has already been intimated, the representative of the cer-
tificate signers, in giving his written approval of the placing of other names
upon the ballot, cannot and does not make any new nomination.   He merely
chooses associates for the independent candidate out of the entire list of nom-
inees for other offices already in the field.   That it was the intention of the
legislature to allow him to do this is apparent from the language of the stat-
ute, and the application of the relators for a peremptory writ of *mandamus*
must, therefore, be granted.